IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZREEN RAZZAK, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>WELLS FARGO BANK, N.A.,<br>　　　　Defendant. | Case No. 17-cv-04939-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 41 |

Before the Court is defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss, filed February 9, 2018. Plaintiffs Nazreen Razzak ("Razzak") and Sharifa Shama Ali ("Ali") have filed opposition, to which Wells Fargo has replied. The Court, having read and considered the papers filed in support of and in opposition to the motion, rules as follows.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

"On or about October 12, 2005," Razzak obtained a loan for $624,000 ("the Loan"), pursuant to a Promissory Note ("the Note"). (See SAC ¶ 10.) The Loan was secured by a first-lien Deed of Trust on a property located at 45 Blossom Court, Daly City, CA 94014 ("the Property"), which loan subsequently was "acquired" by Wells Fargo, the "current successor-in-interest" to the Loan. (See SAC ¶¶ 9-10.)[2]

In March 2009, Razzak stopped making monthly payments on the Loan, and,

---

[1] The following facts are taken from the Second Amended Complaint ("SAC") and documents identified in Wells Fargo's request for judicial notice.

[2] Ali , the co-owner of the Property, has been joined as a necessary party pursuant to Rule 19(a)(1) of the Federal Rules of Civil Procedure.

1  consequently, on July 8, 2016, and October 11, 2016, respectively, Wells Fargo recorded
2  a Notice of Default and a Notice of Trustee's Sale.  (See Request for Judicial Notice, filed
3  February 9, 2018 ("RJN"), Exs. I, J.)[3]  On October 14, 2016, Razzak filed for Chapter 13
4  bankruptcy (see RJN Ex. K), and, "[a]round the same time," applied for a loan
5  modification  (see SAC ¶ 20).

6  On December 9, 2016, Wells Fargo denied Razzak's application on the ground
7  she had "insufficient income" (see SAC ¶ 20), after which denial, Razzak, on February
8  27, 2017, reapplied for a loan modification, on the basis that she had increased the
9  amount she charged for the rental of the Property (see SAC ¶¶ 20-22).  Between
10 February 2017, and May 2017, Razzak "submitted all information requested" by Wells
11 Fargo's "point of contact," Derrick Pargas.  (See SAC ¶¶ 22-32.)

12 On May 16, 2017, Wells Fargo, through an online service, "notified" Razzak that
13 her application was "complete."  (See SAC ¶ 35 & Ex. B.)  "That same day," Wells Fargo
14 denied Razzak's application on the ground that she "did not provide [Wells Fargo] with
15 valid documents as requested."  (See SAC Ex. C; see also id. ¶ 36.)

16 On July 21, 2017, plaintiffs filed the above-titled action in state court, after which
17 the case was removed to this District, where plaintiffs, on September 28, 2017, filed a
18 First Amended Complaint ("FAC") alleging the following four Causes of Action: (1)
19 "Negligence," (2) "Negligent Misrepresentation," (3) "Unfair Competition [in] Violation of
20 Business and Professions Code Section 17200 *et seq.*," and (4) "Declaratory Relief,"
21 pursuant to California Code of Civil Procedure § 1060.

22 By order filed December 8, 2017, the Court dismissed the FAC in its entirety and
23 afforded plaintiffs leave to amend, after which dismissal plaintiffs filed, on January 26,
24 2018, their SAC, alleging the same four Causes of Action.  By the instant motion, Wells

---

[3] Wells Fargo's unopposed request for judicial notice of fifteen documents, all of which are either (1) referenced and relied on in the SAC or (2) copies of official records, is hereby GRANTED.  See Sanchez v. Wells Fargo Bank, N.A., No. 14-CV-07119-BRO (JEM), 2014 WL 12597038, at *2-3 (C.D. Cal. Nov. 21, 2014) (holding courts may take judicial notice of documents referenced in complaint and/or publicly filed).

Fargo moves to dismiss the SAC in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, Wells Fargo seeks dismissal of the SAC on two separate grounds. First, Wells Fargo contends plaintiffs are judicially estopped from asserting their claims because Razzak failed to timely disclose those claims in her Chapter 13 bankruptcy. Second, Wells Fargo contends the SAC fails to state claims upon which

3

relief may be granted. The Court addresses each ground for dismissal in turn.

**A.  Judicial Estoppel**

As noted, Razzak filed for Chapter 13 bankruptcy on October 14, 2016. (See RJN, filed February 9, 2018, Ex. K.)  On October 31, 2016, Razzak filed a schedule of assets; among those assets she listed one legal claim, which claim is unrelated to the instant action. (See id. Ex. L at 8); see also 11 U.S.C. § 521(a) (providing, "[t]he debtor shall . . . file . . . a schedule of assets and liabilities"). Thereafter, on June 12, 2017, Razzak filed a Second Amended Chapter 13 Plan ("the Plan"), on which form, under the heading "Collateral to be Surrendered," she listed "45 Blossom Court, Daly City CA 94014." (See id. Ex. N)  The Plan was confirmed by the bankruptcy court on July 27, 2017, six days after plaintiffs filed the instant action in state court. (See id. Ex. O.)  On October 20, 2017, eight days after Wells Fargo filed its motion to dismiss the FAC, which motion was based in part on judicial estoppel, Razzak filed an amended schedule of assets in which she listed the instant claims against Wells Fargo, giving them a value of "$0.00." (See RJN, filed February 23, 2018, Ex. A at 6.)[4]  Based on the above events, Wells Fargo contends the doctrine of judicial estoppel bars plaintiffs' claims.

"'[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion,'" and is intended to "'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" See Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 270 (9th Cir. 2013) (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)) (alteration in original). In the bankruptcy context, the Ninth Circuit looks to several factors when determining whether to apply the doctrine in a particular case: (1) whether the positions taken before the bankruptcy court and the court asked to apply the doctrine are "clearly inconsistent ('a claim does not exist' vs. 'a claim does exist')"; (2) whether "the plaintiff-debtor succeeded

---

[4] Plaintiffs' unopposed request for judicial notice of Razzak's amended schedule is hereby GRANTED. See Sanchez, 2014 WL 12597038, at *3.

4

in getting the first court (the bankruptcy court) to accept the first position"; and (3) whether "the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit)." See id. at 271. Nevertheless, because the doctrine of judicial estoppel is intended to "prevent litigants from playing 'fast and loose' with the courts[,] . . . 'it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.'" See id. (quoting New Hampshire, 532 U.S. at 750-53).

In that regard, although federal courts have adopted a "presumption of deceit," by which, "if a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation)," judicial estoppel bars the action, see id. at 271, where, as here, a debtor, after omitting pending claims, corrects such omission by amending the schedule of assets to disclose the omitted claims, the presumption of deceit "no longer comports with New Hampshire," see id. at 273. Rather, under such circumstances, "judicial estoppel requires an inquiry into whether the plaintiff's bankruptcy filing was, in fact, inadvertent or mistaken, as those terms are commonly understood," see id. at 276, and in connection therewith, the Court may consider evidence outside the pleadings, see Dzakula v. McHugh, 746 F.3d 399, 401 (9th Cir. 2014); Zyla v. Am. Red Cross Blood Servs., No. 13-CV-2464-EMC, 2014 WL 3868235, at *8 (N.D. Cal. Aug. 6, 2014) (holding, "although courts do not typically look outside the pleadings to decide a motion to dismiss, the Court finds it necessary to consider [plaintiff's] declaration in deciding whether the inadvertent/mistake exception applies").

In this instance, the Court, in dismissing the FAC, directed plaintiffs to submit, along with any amended pleading, one or more declarations explaining (1) Razzak's failure to amend her schedule of assets to disclose the instant claims, (2) Razzak's designation of the claims' value as $0.00, and (3) the import of Razzak's "surrender" of the Property.

By the instant motion, Wells Fargo, citing Hamilton v. State Farm Fire & Cas. Co.,

270 F.3d 778 (9th Cir. 2001), first argues plaintiffs' claims are barred because "[n]owhere did [] Razzak disclose any claims against Wells Fargo, nor were the bankruptcy schedules amended to preserve any [such] claims" until after her proposed plan was confirmed and Wells Fargo had raised the issue of judicial estoppel. (See Mot. at 4:24-27); see also see Hamilton, 270 F.3d at 785 (holding "[t]he Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*"; further holding "[t]he debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding") (internal quotation and citation omitted) (emphasis in original).

In support of the SAC, plaintiffs have submitted a declaration from Razzak, in which she states she "was not aware of any requirement to amend" her schedules, and that, "[a]fter being notified of the potential requirement[,] . . . [she] immediately agreed to have [her] bankruptcy attorney file an amended schedule." (See Razzak Decl., filed Jan. 26, 2018, ¶¶ 9-10.) The Court finds Razzak's statement as to inadvertence or mistake suffices to avoid dismissal at this early stage of the proceedings. See, e.g., Powell v. Wells Fargo Home Mortg., No. 14-CV-04248-MEJ, 2015 WL 4719660, at *3, *6 (N.D. Cal. Aug. 7, 2015) (holding plaintiff's declaration, in which he stated he "did not understand" he was required to "list as property anything related to a future recovery on a claim" or that his "concerns" about defendant's conduct was "property," sufficient to avoid judicial estoppel at pleading stage).

Wells Fargo next contends Razzak's ultimate disclosure is insufficient to prevent judicial estoppel, given her amended schedule assigned "$0.00" value to the instant claims, for which claims, in a lawsuit filed prior to her amended schedule, she initially sought, and continues to seek, monetary damages. Although such inconsistency may have some bearing on Razzak's assertion of inadvertence or mistake as an explanation for her earlier failure to disclose, Wells Fargo has not cited, and the Court has not located, any case holding the assignment of $0.00 value to an asset can, by itself,

support judicial estoppel. See Myers v. Dolgencorp, Inc., No. 05-CV-1419-SMH, 2006 WL 3290475, at *5 (W.D. La. Nov. 13, 2006) (declining to apply judicial estoppel based solely on debtor-plaintiff's assignment of "0.00" value to asset; noting "this Court has found no precedent" for dismissal under such circumstances). Moreover, in conjunction with their SAC, plaintiffs have submitted a declaration by Razzak's bankruptcy counsel, in which he states the value "was set at $0.00" because it is his "understanding" that "these types of cases . . . often settle or resolve in a manner which does not provide monetary value to the Chapter 13 estate, such as through a loan modification or restructure." (See Seabrook Decl., filed January 26, 2018, ¶ 4.)

Lastly, Wells Fargo contends Razzak's "surrender" of the property to Wells Fargo, as set forth in the Plan, estops plaintiffs from pursuing their claims for an injunction to prevent foreclosure. The Court agrees. Although the Bankruptcy Code does not define "surrender," courts interpret the term to mean the debtor "will make the collateral available so the secured creditor can, if it chooses to do so, exercise its state law rights in the collateral." See In re Rosa, 495 B.R. 522, 523 (Bankr. D. Haw. 2013); see also Bank of New York Mellon v. Watt, No. 14-CV-02051-AA, 2015 WL 1879680, at *4 (D. Or. Apr. 22, 2015) (defining "surrender" in Chapter 13 context as "the debtor's relinquishment of his or her right to the property at issue, such that the secured creditor is free to accept or reject that collateral") (citing Rosa, 495 B.R. at 523). Consequently, plaintiffs' attempt to enjoin Wells Fargo from foreclosing on the Property is "clearly inconsistent," see Ah Quin, 733 F.3d at 271, with Razzak's agreement, set forth in the plan for which she obtained a confirmation, to surrender such collateral to Wells Fargo, and, accordingly, to the extent plaintiffs seek to enjoin foreclosure of the Property, plaintiffs' claims are barred, see Hull v. Wells Fargo Bank, N.A., No. 15-CV-01990-AA, 2016 WL 1271675, at *4 (D. Or. Mar. 28, 2016) (holding Chapter 13 debtor-plaintiff estopped from asserting claim to invalidate foreclosure because debtor-plaintiff "cannot tell the bankruptcy court she will surrender the property and then use [another] court to block [creditor] from exercising its ownership rights"); cf. In re Ryan, No. BAP HI-16-1391, 2017 WL 6803538, at *3 n.4 (B.A.P. 9th Cir.

Jan. 4, 2017) (observing debtor-plaintiff who "surrender[ed]" property and "never opposed their lender's right to foreclose" may be able to bring state law claim to require lender to "comply with state foreclosure law").

To the extent plaintiffs assert claims for damages, the Court next turns to the sufficiency of the pleadings.

## B.  First Cause of Action (Negligence)

Under California law, to state a claim for negligence, a plaintiff must adequately plead the following elements: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." See Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 62 (Cal. Ct. App. 2013).

### 1.  Duty of Care

Plaintiffs allege Wells Fargo breached its duty of care by denying Razzak's loan modification application on the basis of a failure to "provide [Wells Fargo] with valid documents as requested" (see SAC Ex. C), whereas, according to plaintiffs, Razzak did, in fact, "provide all information within the timeframes proscribed" by Wells Fargo (see SAC ¶ 36). Additionally, plaintiffs allege, Wells Fargo was "negligen[t] per se" by "fail[ing] to maintain policies and procedures designed to provide a borrower with accurate information," as required by the Real Estate Settlement Procedures Act ("RESPA"). (See SAC ¶¶ 43-47 (citing 12 U.S.C. § 2605(k)(E); 12 C.F.R. § 1024.38(a)).)

Under California law, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." See Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991). California Courts of Appeal and federal district courts are, however, "divided on the question of whether accepting documents for a loan modification is within the scope of a lender's conventional role," and, if it is not, "under what circumstances [such acceptance] can give rise to a duty of care with respect to the processing of the loan modification application." See Rossetta

v. CitiMortgage, Inc., 18 Cal. App. 5th 628, 638 (Cal. Ct. App. 2017) (internal quotation and citation omitted) (collecting cases).

For purposes of the latter inquiry, courts, although not "settl[ing] on a uniform application thereof," see id. at 637, look to the following factors set forth in Biakanja v. Irving, 49 Cal. 2d 647 (Cal. Ct. App. 1958): (1) "the extent to which the transaction was intended to affect the plaintiff"; (2) "the foreseeability of harm" to the plaintiff; (3) "the degree of certainty that the plaintiff suffered injury"; (4) "the closeness of the connection between the defendant's conduct and the injury suffered"; (5) "the moral blame attached to the defendant's conduct"; and (6) "the policy of preventing future harm." See id. at 650; see also Rossetta, 18 Cal. App. 5th at 637.

The California Supreme Court, however, has not addressed the question of whether acceptance of a loan modification application can give rise to a duty of care, and, consequently, this Court is required to "predict" how it would decide the issue. See Strother v. S. Cal. Permanente Med. Grp., 79 F.3d 859, 865 (9th Cir. 1996) (holding, in absence of precedent from state's highest court, federal court applying state law "must predict how the highest state court would decide the issue") (internal quotation and citation omitted).[5] As set forth below, the Court, applying the Biankanja factors to the facts presented in the instant action, finds the California Supreme Court would not find Wells Fargo owed Razzak a duty of care.

As to the first factor, the extent to which the transaction was intended to affect Razzak, any potential loan modification, although undoubtedly intended to affect Razzak, was "also intended to affect and benefit [Wells Fargo] by maximizing its return." See Daniels v. Select Portfolio Servicing, Inc., 246 Cal. App. 4th 1150, 1182 (Cal. Ct. App. 2016). Consideration of Razzak's application thus was intended to affect Razzak to "a

---

[5] To date, there are no published Ninth Circuit opinions addressing the issue. In its most resent unpublished opinion, however, it weighed the Biakanja factors and found the lender had no duty of care to promptly process the borrower's loan modification application. See Anderson v. Deutsche Bank Nat. Tr. Co. Americas, 649 Fed. App'x. 550, 552 (9th Cir. 2016).

9

lesser extent than was the case in Biakanja, . . . where the end and aim of the transaction" was to benefit the plaintiff. See id. (internal quotation and citation omitted).

Accordingly, the first factor weighs only slightly in favor of finding a duty of care.

As to the second factor, the foreseeability of harm to the plaintiff, although the loss of an opportunity to obtain a modification can constitute a foreseeable injury, see Alvarez v. BAC Home Loans Servicing, LP, 228 Cal. App. 4th 941, 949 (Cal. Ct. App. 2014), where, as here, there is a lengthy history of nonpayment, in this instance almost eight years, the magnitude of the foreseeable harm is relatively small.

Accordingly, the second factor likewise weighs only slightly in favor of finding a duty of care.

As to the third factor, the degree of certainty the plaintiff suffered harm, given the substantial number of years in which Razzak had been in default, the primary harm, namely, potential loss of the Property, as well as late fees, foreclosure fees, and emotional distress (see SAC ¶ 51), had already been incurred, and is wholly attributable to the applicant's own conduct, not that of the lender.

Accordingly, the third factor weighs against finding a duty of care.

As to the fourth factor, the closeness of the connection between the defendant's conduct and the injury suffered, "[i]f the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, [is] not . . . closely connected to the lender's conduct." See Lueras, 221 Cal. App. 4th at 67. Here, it is undisputed that Razzak's need for a loan modification was the result of her inability to repay her loan, which inability is, in no manner, attributable to Wells Fargo.

Accordingly, the fourth factor weighs against finding a duty of care.

As to the fifth factor, the moral blame attached to the defendant's conduct, "[i]f the [defendant] lender did not place the borrower in a position creating a need for a loan modification, then no moral blame [is] attached to the lender's conduct." See id. Here, Wells Fargo played no role in the circumstances that created Razzak's need for a

10

1 modification.

2 Accordingly, the fifth factor weighs against finding a duty of care.

3 As to the sixth factor, the policy of preventing future harm, although California courts have found the state legislature's enactment of the Homeowner Bill of Rights' ("HBOR"), reflects a "strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost," see Alvarez, 228 Cal. App. 4th at 950, the relevant question is "not whether there is a public policy in favor of preventing future harm to borrowers," but "whether imposing a duty would further that policy," see Daniels, 246 Cal. App. 4th at 1183. Here, imposition of a duty of care would not further the policy interests reflected in HBOR. First, the sections of HBOR on which the cases citing the policy rely exclude from the definition of "borrower" individuals such as Razzak, who, at the time her modification application was under consideration, had a pending Chapter 13 case in which there was no order granting relief from the statutory stay of foreclosure. See Cal. Civ. Code § 2920.5(c)(2)(C). Further, as one California court has observed, even where the policy reflected in HBOR is applicable, although "[i]mposing negligence liability may give lenders an incentive to handle loan modification applications in a timely and responsible manner," imposing such liability "could be a disincentive to lenders from ever offering modifications" in the first place. See Daniels, 246 Cal. App. 4th at 1183.

Accordingly, the sixth factor is neutral.

In sum, as set forth above, only two of the six relevant factors weigh, and only slightly so, in favor of finding a duty of care. Consequently, the Court finds Wells Fargo owed Razzak no such duty.

Further, to the extent plaintiffs' negligence claim is based on the additional theory that Wells Fargo is negligent per se by violating RESPA's requirement that lenders "maintain policies and procedures that are reasonably designed to . . . [p]rovide owners . . . of mortgage loans with accurate and current information and documents about [their] loans," see 12 C.F.R. §§ 1024.38(a), (b)(iv), plaintiffs reliance thereon is unavailing.

11

Negligence per se is an evidentiary presumption that "applies only after determining that the defendant owes the plaintiff an independent duty of care." See Cal. Serv. Statoin & Auto Repair Ass'n v. Am. Home Assurance Co., 73 Cal. Rptr. 182, 192 (Cal. Ct. App. 1998). As set forth above, the Court has found Wells Fargo owed Razzak no duty of care. Moreover, plaintiffs' allegation of a single failure to properly process a loan modification application is insufficient to plead a failure to maintain policies and procedures.

**2. Causation**

The Court previously dismissed plaintiffs' negligence claim as alleged in the FAC, finding plaintiffs had failed to allege facts sufficient to show Wells Fargo's conduct proximately caused plaintiffs' claimed injuries. Even assuming, arguendo, plaintiffs have sufficiently alleged a duty of care, plaintiffs have again failed to sufficiently allege such causal connection, as the SAC contains no additional allegations pertaining to causation.

Instead, in the SAC, as in the FAC, plaintiffs again allege, in conclusory fashion, that, "[a]s a result of [d]efendant's conduct, [p]laintiffs face the imminent loss of their property to foreclosure, late fees and foreclosure fees . . . , loss of money, expenditure of attorney's fees, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression." (See SAC ¶ 51.) Moreover, as noted above, plaintiffs incurred any such injuries as a result of Razzak's failure to make her loan payments for a period of almost eight years prior to her submission of the instant modification application. See, e.g., Garcia v. PNC Mortg., No. 14-CV-3543-PJH, 2015 WL 534395, at *10 (N.D. Cal. Feb. 9, 2015) (dismissing negligence claim predicated on lender's alleged mishandling of loan modification application; finding plaintiff's claimed injuries, including penalties and interest accrued during application period, attorney's fees, and loss of equity in home as result of late fees, were "not the product of" lender's alleged conduct, but rather the "result of plaintiff's defaulting on his loan payments").

Accordingly, for all of the reasons set forth above, plaintiffs' First Cause of Action

12

will be dismissed.

### C. Second Cause of Action (Negligent Misrepresentation)

Under California law, a plaintiff must allege the following elements to state a claim for negligent misrepresentation: (1) "a misrepresentation of a past or existing material fact"; (2) "without reasonable grounds for believing it to be true"; (3) "justifiable reliance thereon by the party to whom the misrepresentation was directed"; and (4) "damages." See Fox v. Pollack, 181 Cal. App. 3d 954, 962 (Cal. Ct. App. 1986); see also Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255 (Cal. 2009) (holding claims for negligent misrepresentation "do[] not require intent to defraud").

Here, in light of Wells Fargo's denial of Razzak's application on the basis that she had failed to provide all requested documents, plaintiffs, in support of their negligent misrepresentation claim, allege Wells Fargo "must have misrepresented what was actually necessary for her to be reviewed for a loan modification." (See SAC ¶ 59.) Such inference is not, however, supported by the events on which it relies. See Moss v. U.S. Secret Serv., 572 F.3d 962, 971 (9th Cir. 2009) (holding "courts are not required to make unreasonable inferences or unwarranted deductions of fact to save a complaint from a motion to dismiss") (internal quotation and citation omitted). Moreover, even if plaintiffs had alleged a misrepresentation, plaintiffs, in spite of the Court's prior directive to clarify the damages they incurred as a result of any reliance thereon, again fail to allege, other than in conclusory fashion, any detrimental reliance. (See SAC ¶ 60 (alleging "[i]nstead of looking for alternatives, [Razzak] was lured into acting on the idea that a loan modification was possible").

Accordingly, plaintiffs' Second Cause of Action will be dismissed.

### D. Third Cause of Action (Unfair Competition, Business and Professions Code §§ 1700 et seq.)

Plaintiffs' Third Cause of Action is based on the same conduct as their First and Second Causes of Action. Accordingly, given the Court's finding that those two causes of action are subject to dismissal, plaintiffs' Third Cause of Action likewise will be dismissed.

1  See Ingels v. Westwood One Broad. Servs., Inc., 129 Cal.App.4th 1050, 1060 (Cal. Ct.
2  App. 2005) (holding "defendant cannot be liable under § 17200 for committing unlawful
3  business practices without having violated another law") (internal quotation and citation
4  omitted).

### E. Fourth Cause of Action (Declaratory Relief)

Plaintiff's claim for declaratory relief is brought under section 1060 of the California Code of Civil Procedure, which statute provides an action for such relief where an "actual controversy" exists as to "the legal rights and duties of the respective parties" to a contact. See Cal. Code Civ. Proc. § 1060. Here, the Fourth Cause of Action is premised on plaintiffs' contention that the Note does not allow plaintiffs' principal balance to exceed $780,000, an amount equal to 125% of the original principal balance of $624,000. (See SAC ¶ 78.) In support of their position, plaintiffs rely on the following two provisions in the Note:

> (E) Deferred Interest, Additions to My Unpaid Principal
> From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.
>
> (F) Limit on My Unpaid Principal, Increased Monthly Payment
> My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) [Payment Change Dates] and 3(D) [Calculation of Payment Changes] above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

(See SAC Ex. A at 3.)

Plaintiffs contend Wells Fargo, contrary to the above-quoted language, filed in Razzak's bankruptcy proceedings a claim for $979,345.46, which amount, according to plaintiffs, included a claim for principal in the amount of $924,523.13,[6] which, in turn,

---

[6] Plaintiffs have not explained how they arrived at such figure, nor can it be

14

1 plaintiffs assert, exceeds the 125% "cap."

2 In support of its motion, however, Wells Fargo has offered the proof of claim it submitted in Razzak's bankruptcy case (see RJN Ex. M), by which Wells Fargo sought $979,345.46 in total, $687,891.28 of which was attributed to principal balance, a sum well below the 125% "cap" of $780,000 (see id. at 7). The remainder of the total amount claimed included interest in the amount of $266,631.85, fees and costs in the amount of $3527.57, and escrow deficiencies in the amount of $21,294.76. (See id.)

To the extent plaintiffs contend those additional amounts should be deemed part of the principal balance, the Court notes that, in at least three other actions in this district, the same argument has been made with regard to essentially identical loan provisions, and has been, in each instance, "soundly rejected." See Velasquez v. Wells Fargo, N.A., No. 17-CV-03868-KAW, 2017 WL 3267608, at *2 (N.D. Cal. Aug. 1, 2017) (rejecting argument that total payoff amount exceeded percentage "cap" on principal balance); see also Diamos v. Fay Servicing, LLC, No. 16-CV-05164-DMR, 2016 WL 7230896, at *4 (N.D. Cal. Dec. 14, 2016) (holding provision placing 115% "cap" on principal balance "not reasonably capable" of being read to preclude lender's ability to recover "interest accrued . . . due to the borrower's default[]"); Nadaf-Rahrov v. Shellpoint Mortgage Servicing, No. 16-CV-2112-RS, at *3 (N.D. Cal. Nov. 23, 2016) (explaining in detail post-default application of "cap" on principal balance; characterizing borrower's argument to contrary as "frivolous").

**CONCLUSION**

For the reasons set forth above, Wells Fargo's motion is hereby GRANTED and plaintiffs' SAC is hereby DISMISSED without further leave to amend.

**IT IS SO ORDERED.**

Dated: March 28, 2018

MAXINE M. CHESNEY
United States District Judge

---

calculated from the other figures provided to the Court.

15